Ross SUTTELL, Plaintiff,

v.

**MANUFACTURERS HANOVER TRUST CO., Defendant.**

**No. 91 Civ. 2817 (LJF).**

United States District Court, S.D. New York.

March 23, 1992.

Robert L. Ferris, New York City, for plaintiff.

John W. Ohlweiler, Simpson, Thacher & Bartlett, New York City, for defendant.

## ORDER AND OPINION

FREEH, District Judge.

Defendant Manufacturers Hanover Trust Co. ("Manufacturers Hanover" or the "Bank") moves for summary judgment on plaintiff Ross Suttell's ("Suttell") age discrimination claim. For the reasons stated at oral argument and below, defendant's motion is granted.

## FACTS

Suttell was hired by Manufacturer Hanover's Stock Transfer Administration Department as an Account Administration Specialist on November 16, 1987. He was fifty-six (56) years old at the time.[1] (Defendant's 3(g) Statement ¶ 1).[2] As an Account Administration Specialist, Suttell was responsible for handling accounts for the Bank's corporate customers, including "co-transfer agency accounts" and "full transfer agency accounts."[3] (*Id.* ¶¶ 2, 11).

As is commonly known, in October 1987, the financial services industry, including the Bank, sustained substantial losses as a result of the stock market crash. (*Id.* ¶ 6; Harrison Aff. ¶ 2). This decline in the financial services industry persisted through 1989 and 1990, and caused a decline in the volume of business in Suttell's department, as well as others. (Defendant's 3(g) Statement ¶ 6).

In response to the decline in business, in November 1987, senior officers in each major area of the Bank were instructed to reduce overhead expenses and staff. (Harrison Aff. ¶ 4). As part of this program to reduce costs, Suttell's supervisor, Lawrence Dennedy ("Dennedy"), developed a plan to merge certain functions of Suttell's department with the Reorganization Services Department, to form a new department to be known as the Equity Services Department. (Defendant's 3(g) Statement ¶¶ 8–9; Dennedy Aff. ¶ 12). Under Dennedy's plan, the new Equity Services Department could employ 20 of the 24 Account Administration Specialists who had previously been assigned to the Stock Transfer Services and Reorganization Services Departments, as long as those Specialists remaining were trained to handle both reorganizational and transfer agency responsibilities. (Defendant's 3(g) Statement ¶ 10; Dennedy Aff. ¶ 14). Obviously, under this plan, three Account Administration Specialists would have to be discharged.

According to Dennedy, he determined which employees would be terminated based on three factors: (1) the type and volume of accounts each Specialist was

---

**1.** Suttell had been employed at the Royal Bank and Trust Company from 1951 to 1981. (Opposition at 2).

**2.** While Suttell opposes Manufacturer Hanover's motion for summary judgment, he did not file a statement of disputed facts, as required by Local Rule 3(g). Accordingly, Manufacturer Hanover's statement of undisputed facts stands unopposed, and may be accepted as true. *See* Rule 3(g) ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984) (affirming district

court finding that unopposed facts contained in movant's 3(g) statement should be deemed admitted).

**3.** According to Manufacturers Hanover, the service required for "co-transfer agency accounts" is largely administrative, and generally involves the issuance and transfer of a customer's stock certificates. (Defendant's 3(g) Statement ¶ 3). By contrast, "full transfer agency accounts" require more recordkeeping and more client contact. (*Id.* ¶¶ 4–5). Suttell disagrees with this description and claims that his co-transfer agency accounts were more demanding than the Bank acknowledges. (Suttell Aff. ¶¶ 6–15).

handling at the time; (2) the skills necessary to service full-agency accounts; and (3) each Specialist's ability to handle more than one type of account. (Defendant's 3(g) Statement ¶ 13; Dennedy Aff. ¶ 15). Because co-transfer agency accounts were perceived as requiring few customer relations, and because Suttell's primary responsibility was to service those less-demanding accounts, Dennedy and the department's "team leaders" determined that Suttell should be one of the employees discharged. (Defendant's 3(g) Statement ¶¶ 15–16; Dennedy Aff. ¶ 16–18, 21).

According to the Bank, Suttell's position was eliminated when he was terminated, and he has not been replaced. Rather, the accounts that Suttell used to service have been redistributed among other Account Administration Specialists. (Defendant's 3(g) Statement ¶¶ 16–17; Dennedy Aff. ¶ 23). Suttell disagrees and contends that he was replaced by a younger Account Specialist from the Reorganization Services Department (Suttell Aff. ¶ 35). Suttell further contends that his performance at the Bank had never been less than satisfactory. (Suttell Aff. ¶¶ 22–34). As a result, Suttell claims that the Bank's decision to terminate him was based on age, in violation of the Age Discrimination Act of 1987 (the "ADEA"), 29 U.S.C. §§ 621 et seq.

## DISCUSSION

■ Under the ADEA, an employer may not discharge or otherwise discriminate against an employee on the basis of age. 29 U.S.C. § 623(a)(1). However, a plaintiff alleging that he has been terminated on account of age has the burden of proving that his age was "the 'determining factor' in his discharge in the sense that, 'but for'

his employer's motive to discriminate against him because of age, he would not have been discharged." *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323 (2d Cir. 1983) (citations omitted). *See also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (plaintiff in age discrimination case bears "ultimate burden" of proving that the defendant intentionally discriminated against him based on age). While an age discrimination plaintiff need not establish that age was the "principal reason" for his discharge, plaintiff does have to show that age was a "significant contributing factor" in the termination decision. *Lowe v. Commack Union Free School Dist.*, 886 F.2d 1364, 1375 (2d Cir. 1989), *cert. denied*, 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). *See also Paolillo v. Dresser Industries Inc.*, 865 F.2d 37, 40 (2d Cir.1989) (plaintiff is "required to show only that the reasons offered by [the employer] were not its only reasons and that the age of [the plaintiff] 'made a difference' in its decision").

■ The Supreme Court has established a three-step inquiry applicable to both Title VII and age discrimination claims.[4] First, the plaintiff must establish a *prima facie* case of discrimination, by showing that (1) he was a member of a protected class; (2) he was qualified for the position from which he was discharged; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. If the plaintiff satisfies each of these requirements, the burden of production shifts to the defendant, to articulate a legitimate, nondiscriminatory reason for its actions.[5] If the defendant does so, the burden shifts again, and the plaintiff must then demonstrate that the

---

**4.** As the Second Circuit recently noted, an age discrimination plaintiff can proceed under two different theories of liability: (1) that defendant's asserted rationale for plaintiff's termination was a mere "pretext" and "not the 'true reason' for the employment decision"; or (2) that defendant had "mixed motives" for terminating plaintiff and that "an illegitimate factor had a 'motivating' or 'substantial' role in the employment decision." *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1183 (2d Cir.1992). As Suttell's memorandum in opposition to the summary judgment motion clearly demonstrates, Suttell is asserting a "pretext" theory of discrimination rather than a "mixed motive" claim. (Opposition at 4). Accordingly, we need not address the standards applicable to a "mixed motive" case.

**5.** While under this analysis the burden of "production" may shift to defendant at times, the burden of persuasion always remains with the plaintiff. *Burdine*, 101 S.Ct. at 1093.

employer's stated reason was actually a "pretext for discrimination." *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990) (outlining applicable standard). *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 1819, 36 L.Ed.2d 668 (1973).

■ Manufacturers Hanover correctly notes that general principles of summary judgment apply with equal force to age discrimination claims. (Motion at 12). Thus, summary judgment is appropriate if there is no genuine issue as to any material fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, because intent and state of mind are frequently disputed in age discrimination cases, courts have approached summary judgment motions in that context with caution. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988).

■ With regard to the elements required for a plaintiff to establish a *prima facie* case of discrimination, it is undisputed that Suttell was a member of a protected class, that he was qualified for the position from which he was discharged,[6] and that he was discharged. As the record stands, however, the circumstances of Suttell's discharge do *not* give rise to an inference of age discrimination. Suttell does not dispute that he was discharged along with two other Account Administration Specialists as part of an overall effort on the part of the Bank to reduce staff. Rather, Suttell asserts that the mere fact that a younger man is now performing some of his prior responsibilities suggests Manufacturers Hanover intended to discriminate against him based on age. (Opposition at 3–4).

We disagree. Contrary to Suttell's claims (Opposition at 4–5), he was not "replaced" by a younger employee. Rather, the record indicates that the accounts previously handled by Suttell and the two other discharged Specialists were distributed among the Equity Services Department's remaining employees. (Dennedy Aff. ¶ 23). Manufacturers Hanover alleges—and Suttell does not dispute—that the younger man upon whom Suttell focuses, Charles P. Collins ("Collins"), handles only 34% of Suttell's former co-transfer agency accounts, and that is in addition to Collins' own reorganization accounts. (Dennedy Aff. ¶ 23). The fact that other employees are handling the accounts previously covered by Suttell does not indicate that Suttell was "replaced" but merely demonstrates that, as in most "reduction-in-force" cases, the Bank has been successful in reducing the number of employees required to perform certain work. *See, e.g., Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990) (no replacement found where another employee is assigned the discharged employee's responsibilities in addition to their other work, or when the discharged employee's work is redistributed among other existing employees already performing related work).

In assessing "reduction-in-force" cases, however, this Court has found that a plaintiff alleging age discrimination satisfies the fourth element required for a *prima facie* case "if he establishes that some evidence exists from which a fact-finder might reasonably conclude that the employer intended to discriminate against older employees." *Morser v. AT & T Information Systems*, 703 F.Supp. 1072, 1081 (S.D.N.Y. 1989). Because Suttell has not done so, the Bank is entitled to judgment as a matter of law.

The only evidence offered by Suttell to demonstrate that the Bank intended to discriminate on the basis of age is the fact that Collins, a younger, less-experienced person, took over some of Suttell's accounts. Assuming this is true and assuming also that, as Suttell alleges, the Bank was mistaken about the extent of his responsibilities for the co-transfer agency accounts, no reasonable fact-finder could review this record and find that Manufactur-

---

**6.** The Bank does assert that Suttell's job performance had been criticized in some respects. (Dennedy Aff. ¶¶ 18–20). However, the Bank does not claim that Suttell's problems rendered him unqualified to perform his job. (Motion at 14).

ers Hanover intended to discriminate against Suttell on the basis of age.[7] Suttell was hired by the Bank at the age of fifty-six, a fact which undercuts any inference of age discrimination. *See, e.g., Zaleski v. Customized Transportation*, 56 Fair Employment Practices Cases 651, 652, 1991 WL 174910 (E.D.Mich.1991) (plaintiff was fifty-one at time of hiring and firing). Moreover, Suttell was not singled out for discharge; he was terminated during a Bank-wide reduction of staff, which resulted in the discharge of two other Account Specialists as well. *See Barnes*, 896 F.2d at 1465 ("By showing the other elements of a [*prima facie*] case, a plaintiff has not presented any evidence indicating that the work force reductions are not the reasons for the discharge and therefore does not make out a ... case absent additional ... evidence tending to indicate that the employer singled the plaintiff out for discharge for impermissible reasons.").

Suttell cannot and does not deny that the majority of his accounts were co-transfer agency accounts, which Dennedy concluded would be the easiest to reassign (Dennedy Aff. ¶ 16), but challenges the accuracy of that conclusion. (Opposition at 8). While Suttell may be correct that the Bank's evaluation of his accounts was incorrect, the Bank is not required to effectuate its staff reduction in the most logical or wisest manner possible. *Davis v. State University of New York*, 802 F.2d 638, 641 (2d Cir.1986). The ADEA merely requires that the Bank not make its termination decision based on an employee's age.

■ Even if we were to conclude that Suttell had established a *prima facie* case of discrimination, Suttell has failed to demonstrate that the Bank's proffered reason for his termination was a mere pretext for

discrimination. Suttell himself acknowledges that "pretext" is generally shown by evidence of "a direct demonstration of age consideration, a showing of policy, pattern or practice of age discrimination or a demonstration that the reasons offered by the defendant are unsupported or not credible." (Opposition at 8) (*citing Scofield v. Bolts & Bolts Retail Stores*, 21 Fair Employment Practices Cases 1478, 1480, 1979 WL 291 (S.D.N.Y.1979)). Suttell has offered no such evidence, and in arguing that the Bank's explanation for his termination is a pretext, again relies on the mere fact that Collins, a younger, less-experienced employee, was assigned to handle his cases. As noted above, that evidence is insufficient to support a finding that Manufacturers Hanover had a discriminatory intent, let alone that such intent was a significant contributing factor in its decision to discharge Suttell. Under these circumstances, no reasonable finder of fact could conclude that the Bank's justification for Suttell's discharge was a mere pretext or sham. Accordingly, Manufacturers Hanover is entitled to judgment as a matter of law.

For the foregoing reasons, Manufacturers Hanover's motion for summary judgment is granted.

SO ORDERED.

■

---

**7.** Suttell asserts that "[a]t the trial, [he] will produce evidence of the sham, the pretext, the fabrications and distortions of fact, the favoritism [sic], that will clearly negate the alleged reason for his termination and substantiate his claim that he was terminated solely because of his age." (Opposition at 5). In making this argument, however, Suttell ignores his obligation under Fed.R.Civ.P. 56(e) to "set forth specific facts showing that there is a genuine issue for trial." Suttell has not done so, and

relies merely on denials of the Bank's claims. This is insufficient to preclude summary judgment. *See Dister*, 859 F.2d at 1114 ("A plaintiff must ... offer 'concrete evidence from which a reasonable juror could return a verdict in his favor, and is not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind.") (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)).