**Lawrence A. MUNN, Plaintiff,**

v.

**MARINE MIDLAND BANK, N.A., Defendant.**

No. 93–CV–0339A.

United States District Court, W.D. New York.

Nov. 27, 1996.

Jeffrey F. Voelkl, Robshaw & Associates, P.C., Buffalo, NY, for Plaintiff.

Martin F. Idzik, Phillips, Lytle, Hitchcock, Blaine & Huber, Jamestown, NY, for Defendant.

### ORDER

ARCARA, District Judge.

The above–referenced case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1)(B), on February 5, 1996. On September 13, 1996, Magistrate Judge Heckman filed a Report and Recommendation recommending that defendant's motion for summary judgment be granted to the extent that it seeks dismissal of plaintiff's breach of employment claim and denied in all other respects.

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for summary judgment is granted to the extent that it seeks dismissal of plaintiff's breach of employment contract claim, and denied in all other respects. The parties shall meet with the Court on Tuesday, December 17, 1996 at 9:00 a.m. for a meeting to set trial date.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case has been referred to the undersigned by Hon. Richard J. Arcara for all pretrial matters and to hear and report on dispositive motions, pursuant to 28 U.S.C. § 636(b). Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, it is recommended that defendant's motion be granted in part and denied in part.

### BACKGROUND

The complaint in this action was filed on April 15, 1 993 seeking damages and injunctive relief based on the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.,* and common law theories of breach of employment contract and fraudulent inducement. Plaintiff alleges that, on January 27, 1992, defendant Marine Midland Bank ("Marine") discharged him from his position as Executive Vice President, Real Estate Industries Division ("REID"), because of his age.

The following facts are not in dispute. Plaintiff was born on June 9, 1942. He worked at Citicorp/Citibank from approximately 1972 through early 1991, eventually attaining the title of Executive Vice President and Senior Credit Officer at a salary of approximately $125,000.00 annually (Item 15, Ex. A). In approximately October, 1990, plaintiff authorized Brooks Griffin, an executive recruiter (or "headhunter"), to make inquiries about the availability of employment at a financial institution in the Buffalo area (Item 17, ¶ 3). Mr. Griffin eventually contacted Simon Martyn, Marine's Executive Vice President for Group Human Resources, and negotiations took place during February and March of 1991 concerning plaintiff's possible employment at Marine (*id.,* ¶¶ 4–6).

On March 26, 1991, Mr. Martyn faxed Mr. Griffin a draft "offer letter" in which various proposals for the terms of plaintiff's employment were set forth as "a basis for discussion only ..." (Item 13, Ex A). The cover memorandum accompanying the draft letter stated:

> It is definitely our intention to engage [plaintiff] on a longterm career basis, and if our future real estate portfolio does not provide sufficient scope for someone of [his] talents and experience, we shall seek to progress him by building on his general credit and managerial expertise. We are not however prepared to offer a formal "golden parachute" arrangement; our intention is to become the most successful regional bank in the USA, and [plaintiff] must buy into that vision, accepting the

inevitable residual risk which is inherent in any business venture.

(*id.*).

By letter dated April 5, 1991, Mr. Martyn extended a formal offer to plaintiff for the position of Executive Vice President, Loan & Asset Management, at a base salary of $190,-000.00 (Item 13, Ex. B). The offer letter contained essentially the same terms as the March 26, 1991 draft letter, along with additional terms regarding facilitation of plaintiff's relocation from Piano, Texas to the Buffalo area. The formal offer letter also contained the following paragraph:

> In the event your employment with Marine is terminated through no fault of your own, before you are vested in the Marine Midland Pension Plan, the bank will purchase an annuity or otherwise guarantee a benefit for the period of time you were with Marine based on the pension benefit formula in effect at the time of your termination. This is in addition to any severance benefit you would be entitled to under the policy at the time of your termination.

(*id.*).

By letter dated April 10, 1991, plaintiff accepted Mr. Martyn's formal offer of employment "as outlined in [the] letter dated April 5, 1 991" (Item 13, Ex. C). Thereafter, by letter dated April 12, 1991, Mr. Martyn advised plaintiff that an addendum to the April 5, 1991 offer letter had been authorized by which defendant agreed "that in the event [plaintiff's] employment with Marine is terminated for reasons other than cause, [plaintiff] will be entitled to receive a severance benefit of a minimum of six months pay" (Item ¶ 3, Ex. D).

Subsequently, as a result of a recently created vacancy, Mr. Martyn offered plaintiff the position of Executive Vice President, REID, at a base salary of $200,000.00 (Item 13, Ex. E). In a memorandum dated May 2, 1991 to David Penketh, Marine's Chief Credit Officer, Mr. Martyn recommended that plaintiff be accepted for employment in this position (Item 13, Ex. F). The recommendation memorandum also noted that plaintiff would report directly to Brian Robertson, Executive Vice President, Special Credits (*id.*).

Plaintiff commenced his employment at Marine on June 3, 1991, six days prior to his 49th birthday. During the time he was employed by Marine, the United States Office of the Comptroller of the Currency ("OCC") conducted an audit of REID. In an internal memorandum dated October 18, 1991, from Mr. Penketh and Marine's Executive Director Keith R. Whitson, the general conclusions of the OCC audit were reported as "positive" (Item 15, Ex. F). According to the memorandum, several of REID's previous problems had been "effectively addressed by management" (id.).

Thereafter, in an internal memorandum to Mr. Penketh dated January 24, 1992, Mr. Robertson expressed his "concerns over [plaintiff]'s performance to date and [his] conclusion that [plaintiff] is the wrong man for the job" (Item 14, Ex. E). Mr. Robertson stated:

> In essence, [plaintiff]'s impact upon the division has been, at best, neutral, and he has failed to live up to expectations. I question whether his contribution to the institution has been, or ever will be, commensurate with his cost to it. Whilst he is a likeable fellow and I have absolutely nothing against him personally, I must conclude that we made a mistake employing him and should now let him go.

*(Id.)*.

A similar recommendation was made by Mr. Martyn in an internal memorandum dated January 24, 1992, to Mr. Whitson. Mr. Martyn stated:

> Your final approval is now needed to ... [t]erminate [plaintiff]'s employment. This is obviously a hard decision in view of the career sacrifices and domestic upheaval he incurred to join us last year, but at his seniority/salary level we simply cannot afford to carry "dead wood."

> \* \* \* \* \* \*

> Under the terms of [plaintiff]'s engagement we shall have to pay him 6 month's severance. This is quite usual in the case of mid-career recruitment at this level, in view of the obvious risks to the executive concerned. I believe we should proceed as

we are contractually obliged to do, and not seek to avoid payment on performance grounds; this is not what is locally termed a severance "for cause."

(Item 20, Ex. B).

In the same memorandum, Mr. Martyn also recommended the appointment of "Bob Engel as [plaintiff]'s successor in REID" (*id.*). Following some discussion about "[t]he controversial area" of this appointment with respect to Mr. Engel's history with Marine and his ability to "meet the very demanding managerial requirements" of the position, Mr. Martyn recommended the following:

> Appoint Engel to the post, but re-evaluate it at the Grade H (SVP) level. This is realistic in view of the general structure of REID and its status as a gradually self-liquidating business. It also avoids some of the problems of perception which would otherwise surround a rather controversial appointment.

(*id.*). At the bottom of this memorandum, Mr. Whitson wrote the following note to Mr. Martyn:

> Thanks for laying this out so succinctly. Although deeply regrettable I believe Robertson's/your recommendations are the correct ones and accordingly give my approval.

(*id.*).

On January 27, 1992, slightly less than eight months after commencing his employment with Marine, plaintiff's employment was terminated. He was 49 years old.[1]

Marine moves for summary judgment dismissing the age discrimination, fraudulent inducement and breach of employment contract claims against it. Oral argument on this motion was held before the undersigned on June 3, 1996. For the reasons that follow, it is recommended that the motion be granted to the extent it seeks dismissal of the breach of contract claim, and denied in all other respects.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra (citing Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91

---

1. Plaintiff alleges that he filed an age discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and that more than 120 days elapsed before he filed this action (Item 1, ¶ 39). No other details are alleged. Plaintiff has attached to the complaint a letter from EEOC Investigator Edith A. Arseneau, dated October 8, 1992, acknowledging receipt of plaintiff's charge (Item 1, Ex. E). By letter dated October 27, 1992, from Audley F. McLean, Marine's Manager of Corporate Employee Relations & Compliance, defendant responded to plaintiff's charge (Item 13, Ex. I). Defendant has not pleaded any defenses in this action (e.g., timeliness, exhaustion) pertaining to the EEOC charge.

L.Ed.2d 265 (1986); *Burke v. Bevona,* 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. AnnTaylor, Inc., supra,* 933 F.2d at 167.

In this case, defendant contends that there are no genuine issues of material fact with respect to plaintiff's age discrimination, breach of contract and fraudulent inducement claims, and that it is entitled to summary judgment dismissing the complaint as a matter of law. These contentions are discussed in turn below.

## II. Age Discrimination Under the ADEA/New York Human Rights Law.

█ The ADEA makes it "unlawful for an employer ... to discharge an individual ... because of such individual's age." 29 U.S.C. § 623(a)(1); *see Johnson v. New York,* 49 F.3d 75, 78 (2d Cir.1995). Under the ADEA, an employer may not discharge an employee by reason of his age if that employee is at least 40—but less than 70—years of age. *See* 29 U.S.C §§ 623(a)(1), 631(a); *see also Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994). This prohibition does not bar the discharge of an employee in the protected age group based on factors other than age. *See* 29 U.S.C. § 623(f)(1); *Woroski, supra.*

█ The New York Human Rights Law provides similar protection. *See* N.Y. Exec. Law § 296(1)(a). Under both the ADEA and the New York Human Rights Law, the ultimate question is whether an employer discriminated against an employee on account of that person's age. *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir. 1994).

█ Where a plaintiff claims discharge from employment in violation of these statutes, the three-step "burden-shifting" test of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)(Title VII), supplies the appropriate analytical framework for determining a defendant's summary judgment motion. *Sutera v. Schering Corp.,* 73 F.3d 13,

16 (2d Cir.1995); *Gallo v. Prudential Residential Services, supra.* Under this test, the plaintiff must first present a *prima facie* case of age discrimination. If the plaintiff does so, the defendant must articulate a legitimate nondiscriminatory reason for its employment decision. "The burden at this phase is one of production rather than persuasion." *Sutera v. Schering Corp., supra (citing Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981)). If the defendant carries this burden of production, the plaintiff must show that the defendant's articulated reason for its decision is in fact a pretext for discrimination. *Id.; McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804, 93 S.Ct. at 1825. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

### A. *Prima Facie* Case.

█ In order to meet his initial burden of establishing a *prima facie* case of age discrimination, plaintiff must demonstrate (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 204 (2d Cir.1995); *Sutera v. Schering Corp., supra.* "[T]he showing the plaintiff must make as to the elements of a *prima facie* case in order to defeat a motion for summary judgment is *de minimis.*" *Id.; see also de la Cruz v. New York City Human Resources Admin. Dep't of Social Services,* 82 F.3d 16, 20 (2d Cir.1996)(required level of proof at *prima facie* stage is "low," and plaintiff's burden is "not onerous").

There is no material factual dispute presented in this case with respect to whether plaintiff has established the first three ele-

ments.[2] Defendant's argument focuses primarily on the fourth element. According to defendant, any inference of age discrimination that might arise under the circumstances of plaintiff's discharge is offset by the fact that plaintiff was almost 49 years old when he was hired. Defendant cites several cases, including *Suttell v. Manufacturers Hanover Trust Co.*, 793 F.Supp. 70 (S.D.N.Y.1992), in support of this position.

■ The *Suttell* case is instructive on this point. In that case, the plaintiff was 56 years old at the time he was hired by Manufacturers Hanover Bank as an account administrator. He alleged that he was terminated because of his age, and that he was replaced in his position by a younger, less-experienced employee. The court granted the bank's motion for summary judgment. According to the court, the record indicated that plaintiff's termination resulted from a "reduction-in-force" by which plaintiff's accounts were redistributed among several employees, rather than "replacement" of plaintiff by any one particular employee. In "reduction-in-force" cases, "a plaintiff alleging age discrimination satisfies the fourth element required for a *prima facie* case 'if he establishes that some evidence exists from which a fact-finder might reasonably conclude that the employer intended to discriminate against older employees.'" *Id.* at 73 (quoting *Morser v. AT & T Information Systems*, 703 F.Supp. 1072, 1081 (S.D.N.Y. 1989)). The court found that because plaintiff had not produced such evidence, any inference of age discrimination raised by the fact that a younger employee took over some of plaintiff's accounts was "undercut[ ]" by the fact that plaintiff was 56 years old at the time he was hired by the bank. *Id.* at 73–74.

■ Defendant cites other cases on this point as well. *See, e.g., Turner v. North American Rubber, Inc.*, 979 F.2d 55, 58–59 (5th Cir.1992)(absent "hard evidence," fact that discharged employee was 52 when hired offsets inference of age discrimination raised by younger replacement); *Libront v. Colum-*

*bus McKinnon Corp.*, 832 F.Supp. 597, 627–34 (W.D.N.Y.1993) (court considered fact that several plaintiffs were over 40 when hired as a factor in determining of motion for judgment as a matter of law after plaintiffs rested their case at trial); *Zaleski v. Customized Transportation, Inc.*, 1991 WL 353847, at *2 (E.D.Mich. May 2, 1991)(absent any direct, statistical, or circumstantial evidence, fact that plaintiff was 51 when hired rebuts any presumption of age discrimination). These cases support the principle that in order to establish the existence of circumstances giving rise to an inference of age discrimination, a plaintiff who was a member of the protected class (*i.e.*, over 40) when hired cannot simply rely on the fact that he or she was replaced by a younger employee, or that a younger employee took over some of his or her duties as a result of a reduction-in-force. Instead, the plaintiff must produce some evidence from which the trier of fact could reasonably conclude that the employer intended to discriminate against older employees.

In this case, plaintiff has submitted the report of its expert witness, Professor James M. Holmes, entitled "Statistical Analysis of the Relationship Between Age and Lay Offs of Executives at Marine Midland Bank" (Item 18, Ex. A). Professor Holmes' report contains the conclusion that, during the relevant time period, defendant terminated the employment of "a statistically significant higher percentage of their older than their younger executives ..." (*id.*, p. 7). Defendant has submitted the report of its own expert witness to refute Professor Holmes' analysis and conclusions (Item 18, Ex. B). This evidence demonstrates the existence of a factual issue not presented to or discussed by the court in the *Suttell* case.

In addition, plaintiff alleged in both his complaint in this action and in his EEOC charge that he was replaced by Mr. Robert Engel, who was 38 years old at the time. In its response to the EEOC charge, defendant stated that at the time of plaintiff's discharge, the bank was in the process of elimi-

---

**2.** As discussed in the text below, defendant asserts that plaintiff was discharged because of poor job performance. Defendant does not dis-

pute that plaintiff was qualified for the position he was ultimately discharged from.

nating or realigning "certain layers of management," and that as part of that process, Mr. Engel "assumed the essential functions of managing down the REID project. That process is now complete, and among others, the position of Officer-in-charge of REID [plaintiff's former position] has been eliminated" (Item 13, Ex. I, p. 2). Mr. Engel's appointment as plaintiff's "successor" was also discussed in the January 24, 1992 memorandum from Mr. Martyn to Mr. Whitson (see Item 20, Ex. B), suggesting that a younger, less-experienced employee would be assuming plaintiff's duties as manager of REID (id.). This is the same memorandum in which Mr. Martyn referred to plaintiff as "dead wood."

▮ Considered as a whole, this evidence is sufficient enable a trier of fact to conclude that Marine Midland Bank intended to discriminate against plaintiff because of his age. This inference is not rebutted by the fact that plaintiff was a member of the protected class when he was hired by defendant. Plaintiff has therefore met his *de minimis* burden of demonstrating *prima facie* age discrimination. Under the *McDonnell Douglas* framework, the burden of production now shifts to defendant to articulate a legitimate, non-discriminatory reason for terminating plaintiff's employment.

### B. Defendant's Articulated Reasons for Discharging Plaintiff.

▮ Once a plaintiff demonstrates a *prima facie* case of age discrimination, the defendant is obligated to produce evidence "which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks, supra,* 509 U.S. at 509, 113 S.Ct. at 2748 (emphasis in original); *Gallo v. Prudential Residential Services, supra,* 22 F.3d at 1226. This evidence must be "clear and specific." *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

▮ Upon review of the affidavits and exhibits submitted in support of this motion, I find that defendant has met its burden of production in this regard. In his January 24, 1992 memorandum to David Penketh, Brian

Robertson articulated and specifically enumerated several "concerns over [plaintiff]'s performance" (Item 14, Ex. E). Based on these concerns, Robertson concluded that plaintiff's "impact upon the division has been at best, neutral," that plaintiff "has failed to live up to expectations," and that "his contribution to the institution" was not "commensurate with his cost to it" (id.). These conclusions are supported by the affidavit of Mr. William Flannery, Senior Vice President, Human Resources Services (Item 13, ¶ 14)("[Plaintiff] was terminated, plain and simple, for poor performance"), as well as defendant's response to the EEOC charge (Item 13, Ex. I)("There is clear and unmistakable evidence that [plaintiff] failed to perform at a level commensurate with the position for which he was hired").

Taking these statements as true, I find sufficient evidence to permit the conclusion that defendant had a legitimate, nondiscriminatory reason for discharging plaintiff. The inquiry thus turns to whether plaintiff has met his burden of showing that this reason was in fact a pretext for discrimination.

### C. Pretext.

▮ At the third stage of the *McDonnell Douglas* analysis, the plaintiff has the burden of persuading the trier of fact *both* that the reason articulated by defendant was false, *and* that discrimination was the real reason for the employment action taken. *St. Mary's Honor Ctr. v. Hicks, supra,* 509 U.S. at 516, 113 S.Ct. at 2752; *Gallo v. Prudential Residential Services, supra,* 22 F.3d at 1225. As stated by the Second Circuit in the *Gallo* case:

What this means in the summary judgment context is that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision.

*Gallo, supra* (citing *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 142 (2d Cir.

1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994), and *Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991)).

■ As set forth above, plaintiff has submitted several memoranda pertaining to the OCC audit conducted in August through October of 1991 indicating that REID management had improved significantly during the time that he was employed by Marine (Item 15, Exs. F–I). Also as set forth above, Mr. Martyn's January 24, 1 992 memorandum to Mr. Whitson suggests that plaintiff's termination was "not what is locally termed a severance 'for cause'" (Item 20, Ex. B). This direct evidence raises a genuine issue of fact as to the truth or falsity of Marine's explanation that plaintiff was terminated based solely on his "poor performance."

In addition, the statistical analysis and critique thereof in the parties' expert witness reports raise a genuine issue of fact with respect to the likelihood that plaintiff's discharge was the result of Marine's efforts to "downsize" by eliminating their older, higher-paid executives. In short, the record before the court suggests an impending "battle of the experts" on the significance of the statistical evidence regarding Marine's hiring and firing of executives during the relevant time period. Under prevailing caselaw, this alone is sufficient to preclude summary judgment, "without any additional evidence being required ..." *Gallo, supra,* 22 F.3d at 1226 (citing *St. Mary's Honor Ctr. v. Hicks, supra,* 509 U.S. at 511, 113 S.Ct. at 2749).

Accordingly, I find that defendant has failed to establish that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on the age discrimination claims against it. I also find that plaintiff has made a sufficient showing on the essential elements of his age discrimination case to avoid summary judgment. I therefore recommend that defendant's motion for summary judgment be denied to the extent it seeks dismissal of the age discrimination claims in the complaint.

### III. Breach of Employment Contract.

■ Defendant's summary judgment motion also seeks dismissal of plaintiff's breach of employment contract claim. It is well-established in New York that, absent an express agreement establishing a fixed duration of employment, the employment is presumed to be "at will" and "may be freely terminated by either party at any time for any reason or even for no reason." *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). However, New York courts have also recognized that the "at will" rule is no more than a rebuttable presumption. *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 466, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982); *Jones v. Dunkirk Radiator Corp.,* 21 F.3d 18, 22 (2d Cir.1994). In determining whether the plaintiff has overcome the presumption, the trier of fact must consider "the totality of the circumstances, including the writings, the situation, the course of conduct of the parties and their objectives." *Jones, supra* (citing *Weiner, supra* at 466–67, 457 N.Y.S.2d 193, 443 N.E.2d 441); *see also Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 852–53 (2d Cir. 1985).

■ Thus, in order for an at-will employee to state a cause of action for breach of employment contract in New York, the employee must show the existence of circumstances indicating (1) an express limitation on the employer's right to terminate the employment, and (2) reliance upon that limitation. *Awan v. Bank Bumi Daya,* 1996 WL 284946, at *2 (S.D.N.Y. May 29, 1996)(citing *Howley v. Newsday, Inc.,* 215 A.D.2d 729, 627 N.Y.S.2d 85, 86 (2nd Dept.1995); *Charyn v. National Westminster Bank, U.S.A.,* 204 A.D.2d 676, 612 N.Y.S.2d 432, 433 (2nd Dept. 1994); *Preston v. Champion Home Builders Inc.,* 187 A.D.2d 795, 589 N.Y.S.2d 940, 941 (3rd Dept.1992)).

In this case, plaintiff claims that the following communications establish an express limitation on Marine's ability to terminate him at will:

(1) The March 26, 1991 fax and draft offer letter, sent by Mr. Martyn to Mr. Griffin, in which Mr. Martyn promised "to engage [plaintiff] on a longterm career basis" and to "progress him" within the company if the position in the real estate department did not work out (Item 13, Ex A);

(2) The April 5, 1991 formal offer letter from Mr. Martyn to plaintiff (Item 13, Ex. B);

(3) The April 12, 1991 "addendum" in which Marine agreed to pay plaintiff a severance benefit of a minimum of six months pay in the event his employment with was terminated "for reasons other than cause" (Item 13, Ex. D); and,

(4) The May 1, 1991 letter from Mr. Martyn offering plaintiff the position of Executive Vice President in charge of REID (Item 13, Ex. E).

Nothing in these writings indicate an intent on the part of Marine to expressly limit its ability to terminate plaintiff's employment at will. Indeed, several New York courts, and federal courts interpreting New York law, have found as a matter of law that statements similar to those relied upon by plaintiff in this case "are not sufficiently definitive to rise to the level of employment contracts." *Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 234 (S.D.N.Y. 1989)("you will have a good career with Chase"); *see also Awan v. Bank Bumi Daya, supra,* 1996 WL 284946, at *2 (promise of "permanent" employment upon completing probationary period); *Pancza v. Remco Baby, Inc.,* 761 F.Supp. 1164, 1170–71 (D.N.J.1991)(applying New York law; "[a]s long as you performed well, you would always have a job with this company"); *Hunnewell v. Manufacturers Hanover Trust Co.,* 628 F.Supp. 759, 762 (S.D.N.Y.1986)(promises of employment for "full working life" and "through retirement age"); *Diskin v. Consolidated Edison Co.,* 135 A.D.2d 775, 522 N.Y.S.2d 888, 890 (2nd Dept.1987)(oral assurances that plaintiff would be discharged only for cause); *Dalton v. Union Bank of Switzerland,* 134 A.D.2d 174, 520 N.Y.S.2d 764, 765 (1st Dept.1987)(promise of employment "for the longer term").

In addition, Mr. Martyn's statement in his fax to Mr. Griffin regarding Marine's "intention to engage [plaintiff] on a longterm career basis," when read in context with the remainder of the statement, reveals that Marine did not intend limit its ability to discharge plaintiff at will. As Mr. Martyn stated to Mr. Griffin:

We are not however prepared to offer a formal "golden parachute" arrangement; our intention is to become the most successful regional bank in the USA, and [plaintiff] must buy into that vision, accepting the inevitable residual risk which is inherent in any business venture.

(Item 13, Ex. A).

Furthermore, the April 12, 1991 "addendum" provided that in the event plaintiff's employment was "terminated for reasons other than cause," plaintiff would receive six months' severance pay. The clear implication of this provision is that defendant did not intend to limit its ability to discharge plaintiff without cause. Finally, there is nothing contained in the May 1, 1991 letter that can reasonably be interpreted as a promise of any sort.

These communications must also be read in conjunction with the express language in Marine's employee handbook, which provides:

Since there is no contractual employment agreement between the Company and its employees, employment is for no definite duration and is at will, and therefore, employees may resign at any time. Furthermore, because employment is at will, and is of no set duration, an employee may be terminated at any time without notice for reasons determined solely by Marine's management.

(Item 20, Ex. A, p. 3–3).

■ Based on the totality of the circumstances of plaintiff's employment, and in light of the holdings in the cases discussed herein, I find that the written communications referred to above are insufficient as a matter of law to create an express employment contract limiting Marine's right to discharge plaintiff at will. Defendant has thus met its burden of demonstrating the absence of a genuine issue of material fact with respect to plaintiff's breach of contract claim, and plaintiff has failed to come forward with enough evidence to support a jury verdict in his favor on that claim. Summary judgment is

therefore appropriate dismissing the breach of contract claim.

## IV. Fraudulent Inducement.

Plaintiff also alleges that Marine "fraudulently induced [him] to leave his previous employer with the promise of long term employment ..." (Item 1, ¶ 58). He alleges further that Marine "hired plaintiff to secure a satisfactory rating on the OCC exam, and had no intention of employing him long term as they had lead [sic] the plaintiff to believe" (*id.,* ¶ 61).

Under New York law, where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable so as to give rise to an action for fraud in the inducement. *Stewart v. Jackson & Nash,* 976 F.2d 86, 88–89 (2d Cir.1992)(citing 60 N.Y.Jur.2d *Fraud and Deceit* § 206 at 740). As explained by the New York Court of Appeals:

> While "[m]ere promissory statements as to what will be done in the future are not actionable," ... it is settled that, *if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of "a material existing fact"* upon which an action for recission [based on fraudulent inducement] may be predicated.

*Sabo v. Delman,* 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957) (citations omitted), *quoted in Stewart, supra,* 976 F.2d at 89 (emphasis supplied). Thus, where the plaintiff alleges that the defendant made a promise of some future action with the knowledge that it did not intend to fulfill it, the promise becomes "an allegation of present fact which gives rise to a claim of fraudulent inducement." *Stewart, supra,* 976 F.2d at 89; *see also Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986).

The *Stewart* case also points out that where the only fraud alleged in the complaint relates to the same representations that form the basis for a breach of employment contract action, and not to any distinct induce-.

ment or making of the contract, the fraudulent inducement claim cannot stand. *Stewart v. Jackson & Nash, supra,* 976 F.2d at 88 (citing 60 N.Y.Jur.2d *Fraud and Deceit* § 19 at 455–56); *see also Mayer v. Morgan Stanley & Co., Inc.,* 703 F.Supp. 249, 253–54 (S.D.N.Y.1988); *Dalton v. Union Bank of Switzerland, supra,* 134 A.D.2d at 176, 520 N.Y.S.2d at 766; *Chase v. United Hospital,* 60 A.D.2d 558, 559, 400 N.Y.S.2d 343, 344 (1st Dept.1977). Again, as explained in the *Stewart* case, because "at will" employees may be freely terminated at any time for any reason, "they can neither challenge their termination in a contract action nor 'bootstrap' themselves around this bar by alleging that the firing was in some way tortious." *Stewart, supra* (citing *Murphy v. American Home Prods. Corp., supra,* 58 N.Y.2d at 300, 304, 461 N.Y.S.2d 232, 448 N.E.2d 86).

Construing the allegations in the complaint in the light most favorable to plaintiff, and considering the record presented on this motion, I find that plaintiff has sufficiently alleged fraudulent inducement separate from the breach of contract allegations so as to avoid summary judgment dismissing this claim as a matter of law. The complaint contains the allegation that defendant promised plaintiff long term employment while at the same time having no intention of fulfilling that promise, meeting the pleading requirements of *Sabo v. Delman* and *Stewart v. Jackson & Nash.* In addition, plaintiff has submitted as an exhibit to his affidavit a confidential internal memorandum dated May 13, 1991, indicating that Marine was contemplating a "phase out" of the REID division under which only "key" REID management personnel would be retained, creating an issue of fact with respect to whether Marine had the "preconceived and undisclosed intention" of hiring plaintiff only for the short-term purpose of passing the OCC audit.

Accordingly, under *Stewart,* "[t]o the extent that the representations were of present fact, they are actionable under a theory of fraudulent inducement." *Stewart v. Jackson & Nash, supra,* 976 F.2d at 90. Defendant's motion for summary judgment dismissing the

fraudulent inducement claim should therefore be denied.

### CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion for summary judgment (**Item 11**) be GRANTED to the extent that it seeks dismissal of plaintiff's breach of employment contract claim, and DENIED in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the plaintiff and the defendant.

**SO ORDERED.**

DATED: Buffalo, New York

    Sept. 13, 1996