Ann S. DUPREY, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY
OF AMERICA and Robert Rogers,
Defendants.

No. 94–CV–1460.

United States District Court,
N.D. New York.

Jan. 10, 1996.

Delorenzo, Gordon, Pasquariello, Weiskopf & Harding, P.C. (Thomas E. Delorenzo, of counsel), Schenectady, New York, for Plaintiff.

Seyfarth, Shaw, Fairwhether & Geraldson (Edward Cerasia, II, of counsel), New York City, for Defendant.

**MEMORANDUM, DECISION, AND ORDER**

McAVOY, Chief Judge.

Plaintiff **Ann S. Duprey** filed suit against her employer, **Prudential Insurance Company of America** ("Prudential"), and its Associate Manager and Personnel Consultant, **Robert Rogers,** for alleged violations of the Americans with Disabilities Act ("ADA"), seeking injunctive relief, backpay, compensatory damages, reinstatement, and costs, *inter alia.* Defendants filed a motion for summary judgment, seeking dismissal of plaintiff's complaint and an award of costs and disbursements, including attorneys' fees.

## I. Background

### 1. Facts and Allegations

Plaintiff has been completely paralyzed below the waist and partially paralyzed in her left arm since the age of twelve. In December, 1992, defendant Rogers interviewed and hired plaintiff for a part-time position at Prudential's Latham, New York office. She commenced work on January 4, 1993, as a Human Resources Technician. Her job responsibilities included typing letters, word processing, database entry, filing, answering telephones and taking messages, scheduling job interviews, providing employees and applicants with appropriate documents, preparing employee orientation materials, ordering supplies, processing information regarding new employees, and providing clerical support for resignations, terminations, and leaves of absence. Rogers Dep. 13–14; Duprey Dep.Ex. 3; Duprey Dep. 27–32. Plaintiff reported directly to defendant Robert Rogers, who was also plaintiff's only co-worker in the Human Resources department.

Prior to April, 1993, defendant Rogers discussed with plaintiff, on an informal basis, his concerns about her job performance. According to defendant Rogers, these discussions involved plaintiff's typographical errors, misfiling and incorrect distribution of documents, sending job applicants to the wrong locations for interviews, and tendency to socialize at her desk. Duprey Dep.Ex. 5; Rogers Dep. 22–23. On April 8, 1993, defendant Rogers held a formal counseling session with plaintiff to discuss her purported failure to follow his instructions as to how many part-time employment offers to extend to job applicants. Duprey Dep.Exs. 5, 6; Duprey Dep. 73–74; Rogers Dep. 26–28.

On April 28, defendant Rogers and plaintiff met again to discuss alleged deficiencies in her work performance. According to a memorandum that defendant Rogers drafted after their meeting, they discussed her omissions from applicant logs, a computer "crash" that defendant Rogers blamed on plaintiff's failure to heed warnings that the computer was running out of memory, and a missing report from the file of a recently terminated employee that it was plaintiff's responsibility

to make, distribute, and file. Apparently, defendant Rogers then told plaintiff that unless her job performance improved, she would lose her position. He also wrote that "[she] understands that this is a final warning." Duprey Dep.Ex. 7.

In May and June, 1993, defendant Rogers met with plaintiff three more times to review her work performance. Duprey Dep.Ex. 9, ¶¶ 1–2. According to defendant Rogers' memorandum to his file, they discussed the following performance issues at their June 10 meeting: plaintiff's error in programming the fax machine, her putting an associate on "hold" for several minutes without informing defendant Rogers of the call, her failure to type a form letter, her scheduling error, her failure to prepare application packages correctly, and her failure to provide complete information in a telephone message. Id. at 4–5; Duprey Dep.Ex. 12; Duprey Dep. 95–99. At this meeting, defendant Rogers extended plaintiff's final warning status for three or four months, "during which time she would have to exhibit immediate and sustained improvement in her performance." Duprey Dep.Ex. 9, p. 5; Rogers Aff. ¶ 7.

Defendant Rogers and plaintiff met again in October, 1993. At this meeting, Rogers noted that plaintiff had made minor improvements in some areas, but extended her final warning status for at least another three months, allegedly because of continued deficiencies in her overall performance. Duprey Dep.Ex. 17; Rogers Aff. ¶ 10. The final warning Rogers drafted after this meeting cites the following examples of plaintiff's alleged shortcomings: making typographical errors, losing time sheets, misfiling forms, leaving confidential employee information in plain view, failing to tell defendant Rogers about a distraught trainee, turning off the answering machine inadvertently, forgetting to type and fax an important document, failing to maintain file organization, sending the wrong forms to another department, and sending employee files to another office without keeping track of which files she had sent. Duprey Dep.Ex. 17, p. 2–6. Rogers allegedly warned plaintiff that "her employment could be terminated at any time while she was on Final Warning status if she did not show immediate and sustained improvement in her performance." Rogers Aff. ¶ 10.

Defendants contend that during the extended final warning period, plaintiff continued to make "thoughtless and intolerable errors" and that her job performance was "simply a disaster." Ds' Mem. 10. Defendants list numerous examples of plaintiff's purported errors between November, 1993 and January, 1994. Id. at 10–11. Defendant Rogers recommended to his supervisor that Prudential terminate plaintiff's employment because of her unsatisfactory job performance. Rogers Aff. ¶ 13; Duprey Dep.Ex. 21, p. 3. Prudential fired plaintiff on February 15, 1994. Ds' Mem. 11–12. Defendants claim that the sole reason for plaintiff's termination was her unsatisfactory job performance. Id. at 11–12; Rogers Aff. ¶ 14; Duprey Dep.Ex. 21.

Plaintiff agrees with some of defendants' assertions regarding her job performance. She admits, for example, that she made "errors" and "mistakes" when she worked for Prudential. Duprey Dep. 66, 83, 86, 96–97, 99, 114, 119, 140, 149–150, 151, 152, 154, 156–60, 162, 167, 170–73; Duprey Dep.Exs. 8, 12, 19. She does contest, however, most of defendant Rogers' descriptions of office mishaps that place the blame on her. Duprey Dep. 66, 84, 85, 148–49; Duprey Exs. Exs. 8, 12, 19.

To support her claim that Prudential terminated her employment because of her handicap, rather than because of her inadequate job performance, plaintiff describes four allegedly discriminatory incidents. First, she claims that despite her employer's promise, she never received certain office equipment that would have facilitated her performance of her job duties. Duprey Aff. ¶ 15. Second, plaintiff claims that defendant Rogers scolded her for coming into the office with wet wheels during winter months. Id. at ¶ 18. Third, she alleges that she was excluded from an employee photograph after defendant Rogers mistakenly told her that she could not appear in it because it was being taken in an inaccessible area. Id. at ¶ 17. Fourth, she asserts that although defendant Rogers always responded to her requests for assistance in retrieving files from the file cabinet, he "might have" asked her

"what's taking you so long" when she had difficulty retrieving a file, but she cannot recall this actually happening. Duprey Dep. 38–39.

## 2. Legal Standards

### a. Summary Judgment

Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Courts exercise special caution when considering whether to grant summary judgment in employment discrimination cases when the employer's intent is at issue. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994). However, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 40 (2d Cir.1994). For a discrimination plaintiff to survive a motion for summary judgment, she must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); she must offer "concrete particulars" to substantiate her claim. *Id.* The Court has examined plaintiff's complaint in light of the preceding considerations.

### b. Discrimination Claims

When analyzing discrimination claims under the ADA, courts apply the same three-part test, announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny, that they apply to most other kinds of statutory discrimination claims. *See, e.g., Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157–58 (3d Cir.1995); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721–22 (2d Cir.1994) (applying the *McDonnell Douglas* standard to a handicap discrimination claim brought under the Rehabilitation Act), *cert. denied*, —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

Accordingly, plaintiff first bears the burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *Lopez v. Metropolitan Life Ins. Co.*, 930 F.2d 157, 160–61 (2d Cir.), *cert. denied*, 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991); *Passonno v. State Univ. of N.Y. at Albany*, 889 F.Supp. 602, 606 (N.D.N.Y. 1995). If she establishes her *prima facie* case, the burden shifts to Prudential "to articulate some legitimate, nondiscriminatory reason" for terminating her employment. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Passonno*, 889 F.Supp. at 607–08. To satisfy this burden, Prudential need "only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

If Prudential produces such evidence, then plaintiff bears the "ultimate burden" to show that Prudential's proffered reasons for the discharge were "a pretext for discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. To carry this burden, plaintiff must prove *"both* that the [articulated] reason was false, *and* that discrimination was the real reason." *St. Mary's*, 509 U.S. at ——, 113 S.Ct. at 2752.

## II. Discussion

### A. Defendant Rogers

■ The ADA does not impose liability on individuals. *Romand v. Zimmerman,* 881 F.Supp. 806, 812 (N.D.N.Y.1995). However, plaintiffs may assert ADA claims against employers either by naming their employers as defendants or by naming individuals as defendants in their representative or official capacities. *Id. See also Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1994) (stating that "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly"). As plaintiff in this case named both Prudential and Rogers as defendants, it is clear that she did not name Rogers in his capacity as a Prudential representative in order to sue Prudential. It follows that there is no genuine issue with respect to the material fact that plaintiff sued Rogers in his individual capacity. Therefore, the Court will grant defendants' motion for summary judgment with respect to plaintiff's claims against Rogers. Even if the ADA permitted individual liability, however, the Court would grant summary judgment as to plaintiff's claim against Rogers because plaintiff has failed to raise any genuine issues of material fact.

### B. Prudential

The Court turns to consider plaintiff's discrimination claim against Prudential in light of the *McDonnell Douglas* framework.

#### 1. *Prima Facie* Case

■ First, the Court considers whether plaintiff has established a *prima facie* case of discrimination against Prudential. Although plaintiffs normally have to establish a *prima facie* case by a preponderance of the evidence, they can survive summary judgment motions by carrying only a *de minimis* burden of proof at this stage. *Chambers,* 43 F.3d at 37 (2d Cir.1994) (quoting *Dister v.*

*Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). To establish a *prima facie* case, plaintiff must show that 1) she was within the protected class; 2) she was discharged; 3) she "satisfactorily performed the duties required in [her] position"; and 4) her discharge occurred "under circumstances giving rise to an inference of discrimination." *Chambers,* 43 F.3d 29, 36 (2d Cir.1994); *Passonno,* 889 F.Supp. at 606. The parties agree that plaintiff has established the first and second elements of her *prima facie* case; their dispute centers around the third and fourth elements.

#### a. Job Performance.

■ Plaintiff claims that she satisfactorily performed the duties required in her position. To support this claim, plaintiff asserts that she had the requisite education and experience to perform her job duties, Duprey Dep. 6–15, and that she performed "more in-depth functions than other Human Resources Technicians within The Prudential by the sixth month of her employment," P's Mem. 5, Duprey Aff. ¶ 12. Even if the Court assumes that plaintiff was qualified for her Prudential job, the allegedly "in-depth" nature of her tasks is irrelevant to issue of whether she performed them satisfactorily.

Plaintiff also argues that according to defendant Rogers, she performed the following tasks satisfactorily: answering and screening phone calls, inputting database information, assisting administrative procedures,[1] and, by October 25, 1993, "complet[ing] typing projects on time and with acceptable quality".[2] Duprey Dep.Ex. 9, p. 5–6; Ex. 17, p 1. The Court notes that the "Job Description Questionnaire" for a "Personnel Technician" describes over twenty different job responsibilities. Even if plaintiff performed five of the listed "major job functions" satisfactorily, that constitutes scant evidence that her overall job performance was satisfactory.

Finally, plaintiff highlights the favorable reviews she has received in her current job

---

1. The Court notes that Rogers' memorandum of June 10, 1993, states only that plaintiff's performance with respect to assisting administrative procedures "has improved with accommodations," not that it was satisfactory. Duprey Ex. 9. p. 5.

2. Immediately following this appraisal, Rogers wrote that "the errors she makes in typing are careless errors due to inadequate proofreading." Duprey Ex. 17, p. 2.

as a Telephone Information Operator at a hospital. P's Mem. 7. According to plaintiff, the duties of this job include "answering and directing phone calls, providing information to callers, directing information to various areas of the hospital, and responding to emergency situations." *Id.* Plaintiff's assertions to the contrary, her ability to perform these duties satisfactorily has almost zero bearing on how well she performed her duties at Prudential. As only one instance of the unjustifiability of plaintiff's inference, her current job appears not to involve typing, but Rogers continually complained about plaintiff's typographical errors when she worked for Prudential.

"In determining whether an employee's job performance is satisfactory, courts may—as they often must—rely on the evaluations rendered by supervisors." *Meiri,* 759 F.2d at 995. "[T]he ultimate inquiry is whether an employee's performance 'meets [her] employer's legitimate expectations.'" *Id.* (quoting *Huhn v. Koehring Co.,* 718 F.2d 239, 244 (7th Cir.1983). Defendants have supplied numerous examples to support their claim that plaintiff failed to perform her job duties satisfactorily at the time of her termination. The Court referred to much of this material *supra.* Defendants also point out that Rogers placed plaintiff on Final Warning status for nine months because of her poor work performance and that he made it clear to plaintiff that Prudential would terminate her employment unless her performance improved. Ds' Mem. 16. Plaintiff has failed to demonstrate that her employer's demands were either illegitimate or arbitrary. *Meiri,* 759 F.2d at 995.

The Court finds that plaintiff's evidence that she performed her job duties satisfactorily at the time Prudential fired her is insufficient to convince a rational trier of fact by a preponderance of the evidence. *See, e.g., Lawson v. Getty Terminals Corp.,* 866 F.Supp. 793, 801 (S.D.N.Y.1994). Stated another way, plaintiff has failed to raise a genuine issue with respect to the material fact that she performed her job duties unsatisfactorily. However, as the Court mentioned previously, on summary judgment, plaintiff has only a *de minimis* burden to establish her *prima facie* case. Although the Court remains unconvinced that plaintiff has supplied sufficient evidence to satisfy even this feathery burden, it will proceed to the next element of the *prima facie* case.

### b. Inference of Discrimination

To withstand defendant's motion for summary judgment, plaintiff must also carry her burden on the fourth element of the *prima facie* case; that is, she has a *de minimis* burden to produce direct or circumstantial evidence that would lead a reasonable fact-finder to conclude that her discharge occurred under circumstances giving rise to an inference of discrimination. One way to establish this element of the *prima facie* case is to show that "plaintiff's position ... was held open or filled by an individual outside the protected class". *Passonno,* 889 F.Supp. at 607. Needless to say, the facts that plaintiff is disabled and that Prudential fired her is insufficient to raise in inference of discrimination.

Plaintiff contends that the circumstances surrounding her termination raise an inference of discrimination based on her disability. First, she argues that her superiors' complaints about her job performance involved a number of "trivial" matters. P's Mem. 5. Second, she refers to the allegedly discriminatory incidents described *supra:* her employer's unfulfilled promises of office equipment that would facilitate her job performance, Rogers' scolding her for failing to wipe off her wet wheels, and her exclusion from an employee photograph.

Although evidence that an employer continually criticized a discrimination plaintiff solely for slight errors prior to firing her could raise an inference of discrimination, the evidence in this case does not support such an inference. Despite plaintiff's willingness to minimize the importance of the numerous mistakes she appears to have made while working for Prudential, the record suggests that she failed to carry out quite basic functions of her job satisfactorily. For instance, plaintiff reluctantly admits in her deposition that a number of letters she typed contained typographical errors. Duprey Dep. 154–60. If Prudential's stated reason for firing her was that she occasionally misspelled words or

that she had once omitted a page number, then perhaps a reasonable fact-finder could infer from such minor complaints that a discriminatory motive underlay the decision to fire her. Plaintiff's typing errors, however, were both more serious and more frequent. *Id.;* Duprey Dep.Ex. 18. Many of them appear to be errors that a competent typist would have avoided and that a decent proofreader would have caught. *Id.* If these errors were trivial, they were only trivial relative to other performance deficiencies that Rogers noted during plaintiff's tenure, many of which the Court summarized *supra.* Plaintiff's attempt to cast her superiors' well-documented criticisms of her work as hypercritical is insufficient to raise an inference that Prudential terminated her for a discriminatory reason.

Plaintiff also points to her non-receipt of certain office furniture as evidence supporting an inference of discrimination. Any inference of discrimination that Prudential's alleged failure to provide such furniture might raise is undercut by evidence that Rogers made substantial efforts to accommodate her handicap. For example, in January 1993, when Rogers and plaintiff traveled on business to New Jersey and plaintiff discovered that her wheelchair would not fit through the bathroom door in her hotel room, Rogers arranged for her to stay in a different room and to receive a free room service dinner in order to compensate for the inconvenience. Duprey Dep. 52–53, 59. Also during this trip, Rogers helped plaintiff get and in and out of the car, carried her wheelchair for her, and put it in the trunk. *Id.* at 58. In August of 1993, Rogers helped plaintiff move supplies from upper to lower file cabinets in her office. Duprey Dep. 36–37. Throughout her employment, whenever plaintiff asked Rogers for assistance in retrieving files from inaccessible cabinets, he would "always" help her. Duprey Dep. 38–39. Plaintiff has failed to explain how evidence of Rogers' seemingly tireless efforts to accommodate her disability is consistent with the charge that he, as a representative of Prudential, discriminated against her on the basis of her disability. The evidence belies plaintiff's claim that Rogers' failure to follow through on his offer to supply plaintiff with a

special desk, which she never requested, evinces a discriminatory animus. Duprey Dep. 22, 127–28.

Neither does the wet wheels incident reveal that defendant terminated plaintiff under circumstances giving rise to an inference of discrimination. The parties agree that in January of 1993, plaintiff's wheels tracked water from the street onto Prudential's carpet and that Rogers told her to dry her wheels. Duprey Dep. 54, 56; Rogers Dep. 75–77. Plaintiff does not dispute Rogers' claim that the carpet had just been replaced because of excess moisture and that he offered to help her dry off her wheels. Rogers Dep. 75, 77. The Court is unable to see how a reasonable fact-finder might conclude from this incident that Prudential terminated plaintiff under circumstances giving rise to an inference of discrimination.

The Court reaches the same conclusion with respect to the photo incident. Plaintiff claims that when a few Prudential employees came to her department to request her attendance for a group photograph, Rogers would not let her go because "she is in a wheelchair, you are doing it out the back door and she can't get down that step." Duprey Dep. 51–52. When plaintiff countered that she could take an alternative, level route to the site of the photograph, Rogers allegedly refused, stating that their inclusion in the photograph was unimportant because members of a different department were to be its subjects. *Id.* at 52. Rogers testified that he does not recall this incident. Rogers Dep. 74–75. There is no evidence that Rogers himself appeared in the photograph, organized it, or permitted other employees to participate. Although plaintiff is quick to characterize Rogers' alleged actions as evidence of his discriminatory animus, the incident appears instead to reflect his concern for plaintiff's safety and at worst, his unwillingness to let her take time away from her job in order to participate in another department's event.

Even if some of the events plaintiff described gave rise to an inference of discrimination, a reasonable finder of fact could find that inference negated. Plaintiff fails to ex-

plain why Rogers or Prudential would have hired her in the first place and retained her for thirteen months despite her apparent performance problems if they considered disabled people to be inferior workers. *See Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209, 215 (4th Cir.1994) ("An employer who intends to discriminate against disabled individuals or holds unfounded assumptions that such persons are not good employees would not be apt to employ disabled persons in the first place."); *see also Suttell v. Manufacturers Hanover Trust Co.,* 793 F.Supp. 70, 74 (S.D.N.Y.1992) (stating as reason for plaintiff's failure to establish *prima facie* of age discrimination that "Suttell was hired by the Bank at the age of fifty-six, a fact which undercuts any inference of age discrimination.").

Even more tellingly, Prudential hired a disabled woman to replace plaintiff. Rogers Aff. ¶ 17. Ms. Fish, the new Human Resources Technician, "is slightly paralyzed on the left side of her body and has limited use of her left hand, left wrist, and left leg. [She] types with one hand." *Id.* Nevertheless, "[her] work performance has been excellent, and she was converted to full-time status effective July 31, 1991." *Id.* Plaintiff argues that Prudential hired Ms. Fish only after learning of plaintiff's lawsuit, in an attempt to mask defendants' discriminatory animus towards plaintiff. Ds' Mem. 9. Her evidence is that Ms. Fish started working for Prudential four months after plaintiff's termination and three months after she retained counsel to pursue her discrimination claim. *Id.* In response to plaintiff's surmise about defendants' motive for hiring Ms. Fish, Rogers states in his supplemental affidavit that he first learned of plaintiff's intention to sue Prudential when he received a copy of her E.E.O.C. charge, on or about September 1994, three months *after* he hired Ms. Fish. Rogers Supp.Aff. ¶ 2. This evidence, which plaintiff contests with only a speculative logical leap, substantially undermines any inference of discrimination that might arise from the circumstances surrounding plaintiff's termination. *See Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 106–07 (2d Cir. 1989) (stating that among reasons for female plaintiff's failure to raise inference of gender discrimination was fact that after plaintiff's termination, defendant hired women to assume her duties).

Plaintiff has failed to raise a genuine issue of material fact with respect to the contested elements of her *prima facie* case of discrimination. Even if she had carried this *de minimis* burden, however, the application of the rest of the *McDonnell Douglas* test would leave the Court inclined to grant defendants' motion for summary judgment.

**2. Legitimate Nondiscriminatory Reason**

■ Prudential has satisfied its burden to produce "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1095. Failure to perform her job duties to the satisfaction of her supervisors, defendants' stated and well-documented reason for terminating plaintiff, is a legitimate, nondiscriminatory reason for discharging her. *Harker v. Utica College of Syracuse Univ.,* 885 F.Supp. 378, 386 (N.D.N.Y.1995); *Charrette v. S.M. Flickinger Co.,* 806 F.Supp. 1045, 1060 (N.D.N.Y.1992).

**3. Pretext**

■ On summary judgment, a plaintiff whose claim survives to the final stage of the *McDonnell Douglas* analysis must raise a genuine issue of material fact as to whether the defendant's articulated reasons for taking adverse employment action against her were false and as to whether it is " 'more likely than not [her disability] was the real reason for the discharge.' " *Viola v. Philips Medical Sys. of North America,* 42 F.3d 712, 717 (2d Cir.1994) (quoting *Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir.1994)). The plaintiff's burden is more difficult if her employer substantiates with a "sound and factually supported basis" its neutral reason for terminating her. *Charrette,* 806 F.Supp. at 1060 (citations omitted).

■ Plaintiff's efforts to establish the falsity of plaintiff's articulated reason for terminating her and that a discriminatory animus motivated Prudential to do so fall into two categories: plaintiff's disagreement with

Rogers' assessments of her work and sheer speculation. Ds' Mem. 10–11. As to the first category, even if defendants fired plaintiff for a bad reason, that does not constitute evidence that they fired her for a discriminatory reason. *Cianfrano v. Babbitt,* 851 F.Supp. 41, 48 (N.D.N.Y.1994) (stating that an employer's stated reason may be " 'a good reason, a bad reason, a reason based on erroneous facts, or ... no reason at all, as long as its action is not for discriminatory reasons.' ") (quoting *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187, *reh'g denied en banc,* 747 F.2d 710 (11th Cir.1984)); *Dister,* 859 F.2d at 1116 ("[E]vidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons.").

As to the second category, plaintiff states that she cannot "determine conclusively [Rogers'] motivation for continually attacking my work performance, and ultimately recommending my termination," Duprey Aff. ¶ 13, Duprey Dep. 85, 87, that "Mr. Rogers appeared to become very easily annoyed with certain aspects of my disability, and certain accommodations that were made for me," Duprey Aff. ¶ 13, and that "I genuinely feel that I was being discriminated against because of my disability." *Id.* at ¶ 19; Ds' Mem. 11. None of plaintiff's subjective states raise a genuine issue of material fact as to the reason for her termination.

There are additional reasons for concluding that plaintiff has failed to carry her burden on the third *McDonnell Douglas* factor. In her deposition, plaintiff testified that when Rogers supposedly blamed her for another employee's mistake, he would have blamed her whether or not she had been able to walk. Duprey Dep. 75. Furthermore, plaintiff does not dispute that Frances Hackett and Jennifer Truscott, the Prudential employees who made the ultimate decision to terminate her, based their decision on her poor work performance, rather than on the fact of her disability. Duprey Dep. 45–47; Hacket Aff. ¶ 7; Truscott Aff. ¶ 6. Finally, the Court rejects plaintiff's suggestion that Prudential's filling the vacancy left by her

termination with a disabled person constituted pretext. Most importantly, plaintiff has failed to present evidence that Prudential hired Ms. Fish after plaintiff filed her E.E.O.C. charge. *See Edwards v. Wallace Comm. College,* 49 F.3d 1517, 1521 (11th Cir.1995) (stating that defendant's hiring minority employee to replace minority plaintiff prior to plaintiff's filing E.E.O.C. complaint cuts against allegation that defendant's hiring decision was pretextual).

## III. Conclusion

Plaintiff has failed to raise any genuine issues with respect to the material facts that would constitute a complete *prima facie* case that defendants terminated her employment for a discriminatory reason. Even if she has raised genuine issues with respect to these material facts, and thus carried her *de minimis* burden to show a *prima facie* case of discrimination, defendants have presented a legitimate, nondiscriminatory reason for discharging her. Plaintiff has failed to raise a genuine issue of material fact as to whether defendants' reason was false or as to whether it is more likely that a discriminatory reason motivated its termination decision.

**IT IS HEREBY ORDERED**

That defendants' motion for summary judgment is GRANTED.

That defendants' request for costs and disbursements, including attorneys' fees, is DENIED.

**IT IS SO ORDERED.**