**Igor ASHTON, Plaintiff,**

v.

**PALL CORPORATION, Defendant.**

No. 96–CV–3870 (JS).

United States District Court, E.D. New York.

Jan. 15, 1999.

Lee M. Albin, Albin & Richman, Garden City, NY, for plaintiff.

Michael J. Volpe, Clifton Budd & DeMaria, LLP, New York City, for defendant.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Presently pending before the Court is Defendant's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The Plaintiff, Igor Ashton (hereinafter "Ashton" or "Plaintiff"), commenced this action on or about August 5, 1996, against his former employer, Pall Corporation (hereinafter "Pall" or "Defendant"), alleging a claim of unlawful termination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA").

## FACTUAL BACKGROUND

Plaintiff, Igor Ashton, was hired in or about March 1988 by the Defendant Pall Corporation as a mechanical engineer. (Pl.'s Dep. at 21.) At that time Plaintiff was 41 years of age. (Pl.'s Dep. at 14.) For the first six years Plaintiff received positive performance reviews and commensurate salary increases. (Pl.'s Local Rule 56.1 Statement (hereinafter "56.1") ¶ 1.) On or about November 1992, Plaintiff assumed the role of maintenance manager. (Def.'s 56.1 ¶ 1.) Plaintiff's new position entailed, among other things, delegating assignments and training subordinates. (Def.'s 56.1 ¶ 2 .)

In 1993 there was a merger of two subsidiary departments, and as a result, Plaintiff was moved to the Engineering Department. (Pl.'s 56.1 ¶ 2.) On or about June 7, 1993, Plaintiff began reporting to George Grippo, the Director of Manufacturing. (Def.'s 56.1 ¶ 3.)

On or about February 23, 1994, Plaintiff received a memorandum from George Grippo regarding his unsatisfactory work performance, which stated in relevant part:

I have instructed you, on several occasions, to make sure that your staff is trained. To date, you have not followed my instructions, resulting in the inefficiency of our operations.... This situation must change. Please accept this as formal notification that you are required to train your staff immediately.

(Def.'s 56.1 ¶ 4; Def.'s Ex. C.) This was followed by a second memorandum also entitled "Unsatisfactory Work Performance," dated on or about April 26, 1994, which read in pertinent part:

I want to bring to your attention some items related to maintenance that you have direct responsibility for.... I have expressed my concerns over the poor state of affairs with the maintenance for this area. You have also not addressed the training issues for the department. There is no plan in place to assure that the mechanics are properly trained. You must follow-up with me and then let me know the status. This issue must be straightened out immediately.... These issues must be straightened out immediately. If they are not, you will be subject to further disciplinary action.

(Def.'s 56.1 ¶ 5; Def.'s Ex. D.)

A meeting was held on or about April 27, 1994, in attendance were Igor Ashton, George Grippo and Voula K. Serres, a Human Resources Generalist at Pall. The meeting was convened to discuss Plaintiff's performance. Voula Serres memorialized her impression of the meeting and the specific areas discussed included Plaintiff's "inability to manage the maintenance staff effectively; the lack of technical training that the maintenance staff has; and why [Plaintiff] has not taken proactive steps to change that since the last time this issue was raised over a month ago." (Def.'s Ex. E.) Ms. Serres concluded that the Plaintiff

realizes that he is not capable of handling the managerial and maintenance responsibilities of this job. He iterated on several occasions, 'I am an engineer, not a manager.' When I asked him if he felt he can handle the maintenance staff for this operation he said, 'no, I can't.'

When queried at deposition about this specific exchange, Aston was asked: "During your meeting with Mr. Grippo and Ms. Serres, did you tell Ms. Serres that you were an engineer not a manager?" To which he replied: "Yes, I did." He was then asked: "Did you tell her that you felt that you were not capable of performing the managerial functions?" Ashton replied: "On certain—on existing conditions, no."

On or about May 16, 1994, Grippo conducted Plaintiff's performance evaluation. Grippo indicated that Plaintiff's quality of work, communication skills, and participation and contribution of ideas and solutions were unsatisfactory. (Def.'s 56.1 ¶ 7; Def.'s Ex. F.) On a scale of 1 to 5, representing in ascending order outstanding, above average, proficient, adequate, and unsatisfactory, Plaintiff received proficient in one category, adequate in three categories and unsatisfactory in four categories. (Def.'s Ex. F.) Plaintiff does not claim that Grippo's memos or the performance evaluations evince his claims of age discrimination. (Pl.'s Dep. at 74).

In or about May 1994, Plaintiff met with Patricia Lowy, Corporate Director of Human Resources at Pall, and requested a transfer. (Def.'s 56.1 ¶ 8; Pl.'s Dep. at 84–85.) In describing this conversation, Ashton recounted that Lowy informed him: "That I have to look for a job in a different department or I have to leave. And she offered me even help to get [a] head-hunter. This I remember correctly." (Pl.'s Dep. at 84–85.) Soon thereafter, Vlado Matkovich, Pall's Senior Corporate Vice–President, informed Plaintiff that he would be transferred into the Engineering Department. (Def.'s 56.1 ¶ 8; Pl.'s Dep. at 84–85.)

Sometime between May 1994 and August 1994, Chris Bush, age 32, became Igor's supervisor in the Engineering Department. (Pl.'s 56.1 ¶ 3; Def.'s 56.1 ¶ 10.) Ashton became a Project Engineer and his former responsibilities were assumed by Robert Hoffman, who was also over 40 years of age at the time. (Def.'s 56.1 ¶ 10.)

Plaintiff claims that once Bush became his supervisor he was no longer included in production meetings and received very little work. (Pl.'s Dep. ¶ 4.) In or about the Fall of

1994, two young engineers were hired including James Muldoon who practically took over all of Plaintiff's responsibilities. (Pl.'s 56.1 ¶ 4.)

On or about March 14, 1995, Bush conducted Ashton's performance evaluation, which reads in pertinent part:

Igor has been given assignments with clear objectives that require feeding back information to me; and has, over a time, failed to report on their status. Furthermore, the position he fills requires taking aggressive action to accomplish tasks that arise in the production environment, and has not demonstrated the appropriate decisiveness. This lack of initiative has resulted in my having frequently to follow-up on assignments to assure their success. With the exception of the recent past, Igor applies himself minimally.

(Def.'s Ex. H.) Plaintiff signed the performance evaluation under protest. (Def.'s Ex. H.)

Prior to receiving the evaluation, Bush informed Ashton that he is the highest paid engineer in Bush's group and that he could hire someone much younger than Igor to do the same job at a lesser salary. (Pl.'s 56.1 ¶ 5.) Plaintiff immediately thereafter took a voluntary leave of absence for unrelated medical reasons and returned to work on June 5, 1995. (Def.'s 56.1 ¶ 12.)

While the Plaintiff was on leave, Bush prepared a memo to clarify his March 14 evaluation. When the Plaintiff returned, Bush gave him the memo which cited specific examples of poor performance and areas for improvement. In particular, the three paragraphs touched on the following areas: (1) the failure to report on the status of assignments; (2) taking action on the information obtained when determining downtime; and (3) communicating problems to other engineering groups. The memo concluded by stating, "[I]n summary, the above example demonstrates your inability to meet the requirements of your position. If this does not change, I will have no alternative but to terminate you." (Def.'s Ex. I.)

Plaintiff maintains that no follow-up meeting ever occurred nor did Bush ever mention a meeting to discuss Ashton's performance. (Pl.'s 56.1 ¶ 6.) However, the Joint Pre–Trial Order (hereinafter "JPTO") contains "A Statement of Stipulated Facts" denominated Schedule C, which includes the following entry: Bush spoke with the plaintiff several times between June 1995 and February 1996 about work assignments and the need to follow up and/or take initiative. (Def.'s Ex. J, p. 3 at line 19.) Plaintiff did not receive a salary increase in 1994 or 1995. (Def.'s 56.1 ¶ 16.)

On February 16, 1996, Plaintiff's employment was terminated. Plaintiff was given a termination memo. The memo set forth Plaintiff's performance deficiencies including lack of initiative to take on new assignments and failure to report on the status of existing assignments, and concludes by stating "in light of these previously noted examples of failure to meet job requirements, we have no alternative but to terminate your employment." (Def.'s 56.1 ¶ 14; JPTO, Ex. J. p. 3 at line 21.) Although Plaintiff was terminated on March 8, 1996, the termination memo was dated February 16, 1996. (Pl.'s 56.1 ¶ 8.) Two weeks prior to Ashton's termination, Bush hired another young engineer and his first day of employment was on Monday, March 11, 1996, the first business day following Plaintiff's termination. (Pl.'s 56.1 ¶ 7.)

At the time of his termination, Plaintiff was 49 years old. (Def.'s 56.1 ¶ 15.) After Plaintiff's termination, the Defendant did not hire a replacement. (Bush Dep. at 65.) Following his termination, Plaintiff worked for Metex, in New Jersey, as a production equipment maintenance manager. He worked from May through August 1996. He earned $55,000 per year. Plaintiff voluntarily resigned from this position. (Def.'s 56.1 ¶ 18; JPTO Ex. J p. 3 at line 23.)

## DISCUSSION

I. SUMMARY JUDGMENT STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of proof is on the moving party to show that there is no genuine issue of material fact, *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, (1986) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2725, at 93–95 (1983)).

A party opposing a motion for summary judgment " 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* at 248, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo,* 22 F.3d at 1224 (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)). Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).

Although Title VII cases often turn on the issue of an employer's intent or state of mind, such cases may be resolved on summary judgment where appropriate. *Dister,* 859 F.2d at 1114. This is so because the "salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases

than to commercial or other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985). Otherwise "[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Id.*

The Court is mindful that the evidence must be looked at in its entirety, rather than piecemeal, in deciding a motion for summary judgment. *See Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 314 (2d Cir.1997). It is within this framework that the Court addresses the present summary judgment motion.

## II. STATING A CLAIM UNDER THE ADEA

The ADEA provides that it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, an employer may not discharge an employee because of his age if that employee is at least forty years of age. *See* 29 U.S.C. §§ 623(a)(1), 631(a); *see also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609–10, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (noting that Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes. Thus, the ADEA commands that employers are to evaluate older employees on their merits and not their age). It is not unlawful, however, for an employer to discharge an employee based on reasonable factors other than age. *See* 29 U.S.C. § 623(f)(1).

Claims under the ADEA are analyzed under the same *McDonnell Douglas* framework as claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq. See Renz v. Grey Advertising, Inc.,* 135 F.3d 217, 221 (2d Cir. 1997); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 913 (2d Cir.1997). Under the traditional burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973), to establish a *prima facie* case of discriminatory discharge in violation of the ADEA, a plaintiff must show, through direct, statistical or circumstantial evidence: (1) that he was within the protected age group; (2) that he was qualified for the position; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. *Burger v. New York Inst. of Tech.,* 94 F.3d 830, 833 (2d Cir.1996). There is no requirement that an ADEA plaintiff show that he was replaced by a younger employee. *Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994).

█ Once the plaintiff has overcome the *de minimis prima facie* burden, the burden shifts to the defendant to produce "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 559 (2d Cir.1997). Having done so, the presumption of discrimination raised by the *prima facie* case "drops out of the picture," *id.* at 559–60, and "the burden then returns to the plaintiff, who must adduce sufficient evidence to allow a rational fact finder to infer that the employer was motivated in whole or in part by age discrimination." *Norton v. Sam's Club,* 145 F.3d 114, 118 (2d Cir.1998).

█ In considering whether the defendant was motivated in whole or in part by age discrimination, the court must "analyze the evidence, along with the inferences that may be reasonably drawn from it, and decide if it raises a jury question as to whether the plaintiff was the victim of discrimination." *See Scaria v. Rubin,* 117 F.3d 652, 654 (2d Cir.1997) (quoting *Fisher v. Vassar College,* 114 F.3d 1332, 1347 (2d Cir.1997)).

█ Plaintiff is not required to show that "age was the only or even the principal reason for the complained-of employment action," only that "age played a motivating role in, or contributed to, the employer's decision." *Renz,* 135 F.3d at 222. This may, but need not, be shown, in part, through evidence that the proffered nondiscriminatory reason was pretextual. Although highly probative, proof of pretext is neither necessary nor sufficient to establish liability. *Id.* Thus, "[t]hough a discrimination plaintiff may not succeed by proving only that a proffered explanation is false but must prove that discrimination motivated the adverse action, the plaintiff is entitled to succeed by proving discriminatory motivation without proving that a proffered explanation is false." *Renz,* 135 F.3d at 222 n. 3 (citing *Fields v. New York State Office of Mental Retardation and Developmental Disabilities,* 115 F.3d 116, 121 (2d Cir.1997)).

█ Therefore, in the context of a motion for summary judgment, the plaintiff is required to "establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo,* 22 F.3d at 1225. Circumstances that contribute to "permissible inferences" of discriminatory intent may include an employer's more favorable treatment of employees not in the protected group, a sequence of events leading to an employee's discharge, the timing of the discharge, *see Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994), or a significant decrease in the average employee age within a short time after a new, younger decision maker is hired. *See Stratton v. Department for the Aging,* 132 F.3d 869, 879–80 (2d Cir.1997) (five-year drop in average age within fourteen months of takeover by new, "substantially younger" supervisor contributes to inference of age discrimination).

## A. Ashton's Prima Facie Case

As stated earlier, to establish a *prima facie* case of discriminatory discharge in violation of the ADEA, a plaintiff must show: (1) that he was within the protected age group; (2) that he was qualified for the position; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination.

■ Defendant does not contest the first or third elements as it is conceded that Plaintiff was within the protected age group when he was terminated from his employment. As to the second element, whether Plaintiff was qualified for the position, courts look to the position last occupied by the Plaintiff and the criteria chosen by the employer. *See Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir.1997) (absent bad faith, an employer may determine whether job performance is satisfactory based on its own criteria, and an employer need not submit the reasonableness of its good faith employment criteria to the assessment of a judge or jury); *Hawkins v. Astor Home for Children*, No. 96 Civ. 8778, 1998 WL 142134, at *4 (S.D.N.Y. March 25, 1998) (absent bad faith, employer may establish any nondiscriminatory standards of performance it chooses).

■ Defendant's assessment of Plaintiff's annual performance over the final two years found it consistently deficient. The Plaintiff held the position of Project Engineer in the Engineering Department for approximately 20 months, a substantial period of time for Defendant to objectively judge whether Plaintiff had performed adequately.

The fourth element is whether the discharge occurred under circumstances giving rise to an inference of discrimination. The totality of Plaintiff's argument supporting the existence of age discrimination amounts to the following: (1) for the first 6 years of his employment Plaintiff was given positive reviews and salary increases; (2) When Chris Bush, age 32, became Plaintiff's supervisor, Plaintiff received very little work, unclear assignments, and was not included in production meetings; (3) Bush hired two young engineers and one practically took over all of the Plaintiff's responsibilities; (4) Bush told Plaintiff that he was the highest paid engineer in the group and that he could hire someone much younger than the Plaintiff to do the same job at a lesser salary.

Plaintiff also maintains that there was an additional comment made by Bush referring to "somebody performing the job with old school training because he is too old to do the job." (Pl.'s Dep. at 126–28.) This statement was made sometime between August 1994 and 1996, and the Plaintiff could neither identify the subject or the recipient of the statement. A court, however, decides summary judgment motions based solely on admissible evidence and not vague hearsay allegations. *See Finnegan v. Board of Educ. of Enlarged City School Dist. of Troy*, 30 F.3d 273, 274 (2d Cir.1994); *MTV Networks v. Lane*, 998 F.Supp. 390, 393 (S.D.N.Y.1998); *Saari v. Merck & Co.*, 961 F.Supp. 387, 397 (N.D.N.Y.1997).

■ With respect to Plaintiff's prior performance, no inference can be drawn from an employee's prior work record and satisfactory job performance absent a clear temporal nexus to the adverse employment decision. *See, e.g., Ogiba v. Business Servs. Co. of Utica*, 20 F.Supp.2d 379, 382 (N.D.N.Y.1998) (two years of performance evaluations prior to termination could not be considered "creating a paper record" for the decision); *Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665, 674 (E.D.N.Y.1997) (prior positive performance evaluations cannot create a pretext of later unsatisfactory evaluations); *Orisek v. American Institute of Aeronautics and Astronautics*, 938 F.Supp. 185, 188 (S.D.N.Y.1996) (finding evidence that plaintiff's sole unsatisfactory performance evaluation after 17 years occurring one month before discharge did not rebut non-discriminatory explanation), *aff'd*, 162 F.3d 1148, 1998 WL 650257 (2d Cir. Sept. 3, 1998); *cf. Viola v. Philips Med. Sys. of North America*, 42 F.3d 712, 716–19 (2d Cir. 1994) (plaintiff's only poor performance review in twelve years of employment four months before his discharge was used in conjunction with other more convincing facts to establish prima facie case).

■ Although Bush may have commented that Ashton could be replaced by a younger engineer at a reduced salary, it is minimally probative of age discrimination. This is so for two reasons. First, "the ADEA does not prohibit an employer from acting out of concern for excessive costs, even if they arise from age-related facts— such as that employees with long seniority command a higher salary and benefits expensive [sic] than new hires." *Woroski*, 31 F.3d

at 109–10 n. 2 (disregarding statements indicating age bias because they indicated a concern for unjustifiably higher costs associated with employees having greater seniority) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610–12, 113 S.Ct. 1701, 1706–07, 123 L.Ed.2d 338 (1993)). *See also Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 117 (2d Cir.1991) ("nothing in the ADEA ... prohibits an employer from making employment decisions that relate an employee's salary to ... the responsibilities entailed in particular positions and concluding that a particular employee's salary is too high"); *Carey v. Reed Elsevier, Inc.*, No. 96 CIV. 8995, 1998 WL 241951, at *3 (S.D.N.Y. May 14, 1998) (statement that "the problem with Plant Engineering is that it had too many older, overpaid salesmen and that they had to put in a new structure that would consist of 'seniors and juniors'" did not violate the ADEA).

Second, isolated comments cannot in and of themselves make out a case of employment discrimination. *See Arroyo*, 1995 WL 611326, at *5 (finding isolated comments about age "a slender reed on which to hang a whole case"); *O'Connor v. Viacom, Inc.*, No. 93 Civ. 2399, 1996 WL 194299, at *5 (S.D.N.Y. Apr. 23, 1996) ("Many courts have held that stray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of personnel actions, will not defeat the employer's summary judgment motion.") (and cases cited therein).

█ Further, Plaintiff's claim that his responsibilities were diminished does not support an inference of discrimination. In light of Plaintiff's failure to perform his position in a manner consistent with his employer's expectation, it was reasonable for Pall to reduce Plaintiff's responsibilities and to employ others in his stead. *See DiCola v. SwissRe Holding Inc.*, 996 F.2d 30, 33 (2d Cir.1993) ("If a positions's salary has been set at a level commensurate with certain job responsibilities and those responsibilities are subsequently diminished, an employer may make corresponding adjustments in positions and salaries regardless of the age of the employees involved.").

At oral argument, Plaintiff's counsel also stated that Bush and Ashton had previously worked together when Ashton was Bush's supervisor and that Bush's present actions toward Ashton represents a form of retaliation. This mitigates the inference, if any, that Bush's treatment and performance evaluations of Ashton were motivated by age discrimination. *See DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 308 (2d Cir.1986) (employer's conduct in creating job that could be filled only by his female lover though "unfair, simply did not violate Title VII"); *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir.1984) ("The ADEA bars an employer from discharging an employee because of age, but does not prohibit an employer from discharging an employee based on nondiscriminatory factors, however subjective and unsound."); *Lanahan v. The Mutual Life Insurance Co. of New York*, 15 F.Supp.2d 381, 386 (S.D.N.Y.1998) (granting summary judgment because evidence of discrimination based on pension status is not probative of age discrimination); *Arroyo v. New York State Ins. Dep't*, No. 91 Civ 4200, 1995 WL 611326, at *5 (S.D.N.Y.1995) (finding that although supervisors harassed plaintiff through vandalism, undue monitoring, unreasonable searches and other forms of harassment, it was not motivated by age bias and therefore plaintiff failed to establish a prima facie case); *Donaldson v. Merrill Lynch & Co., Inc.*, 794 F.Supp. 498, 508 (S.D.N.Y.1992) (assertions of failing to follow procedures for termination and falsely informing plaintiff of reason for termination do not establish pretext if not specifically related to sexual discrimination). Accordingly, Plaintiff has failed to establish an inference of discrimination and therefore cannot satisfy two of the four required elements of a prima facie ADEA claim.

█ Assuming, *arguendo*, Plaintiff established a valid ADEA claim, nonetheless, Defendant has articulated a legitimate nondiscriminatory explanation for the termination—Plaintiff's poor work performance. This explanation is supported by two years of negative performance evaluations combined with memoranda and discussions warning of the perils of persistent deficient performance.

Further, Plaintiff concedes that Grippo's negative assessment was not discriminatory in motivation, while alleging that Bush's evaluation was ill-served because of a personal animus dating back to a time when their respective roles were reversed.

In order to defeat this summary judgment motion, Plaintiff must show "that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) more likely than not the employee's age was the real reason for the discharge." *Woroski*, 31 F.3d at 108–09 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993)).

Plaintiff relies upon optimistic expectations that at trial he will prove that Defendant created Plaintiff's negative performance evaluations to justify his termination, which, he claims, is only a pretext for the real reason he was discharged—his age. Such blanket statements have no probative value.

Plaintiff also avers that Defendant has failed to submit an affidavit from any of the parties involved in this dispute that has personal knowledge of the facts. Defendant has provided the deposition testimony of the witnesses whose statements were cited and copies of the memorandum and performance evaluations at issue. Rule 56(b) provides, in relevant part:

> A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, *move with or without supporting affidavits* for a summary judgment in the party's favor as to all or any part thereof. (emphasis added).

Clearly, sworn affidavits, though useful, are not necessary.

Conversely, although Plaintiff's affidavit is provided, there are no citations to deposition testimony to refute Defendant's evidence. Although the Court must draw all reasonable inferences in favor of the non-movant, the Plaintiff herein, the party opposing summary judgment may not rest on the pleadings. Plaintiff's memorandum of law in opposition to summary judgment fails to provide a single case citation pertaining to age discrimination or Title VII.

Plaintiff states that he must not be deprived of the ability to cross-examine the testimony of Chris Bush, Pat Lowy and other defense witnesses, yet, Plaintiff has completed discovery and had the full opportunity to depose Defendant's witnesses. Plaintiff's understanding of the mechanics of summary judgment appears confused. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995); *accord Gallo*, 22 F.3d at 1223–24 ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). Thus, for a discrimination plaintiff to survive a motion for summary judgment, he must do more than present "conclusory allegations of discrimination, he must offer concrete particulars to substantiate his claim." *Duprey v. Prudential Ins. Co. of America*, 910 F.Supp. 879, 883 (N.D.N.Y. 1996) (internal quotations and citations omitted).

Therefore, when confronted with summary adjudication, a party does not have the luxury to wait till trial's inception to first establish the prima facie elements of a claim. It is well established that "conclusory allegations or denials in legal memoranda ... are not evidence and cannot create a genuine issue of material fact ..." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995); *see also Western World Ins. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (The party opposing summary judgment cannot "defeat the motion through mere speculation or conjecture.").

Because the file is devoid of evidence that a motivating factor for Plaintiff's termination was his age, Defendant's motion must be granted. *See, e.g., Raskin v. Wyatt Co.*, 125 F.3d 55, 68 (2d Cir.1997) (plaintiff failed to create material issue of fact as to age discrimination); *Criley v. Delta Air Lines, Inc.*, 119 F.3d 102 (2d Cir.1997) (affirming summary judgment dismissal of age discrimina-

tion in hiring claim where employer offered age-neutral explanation), *cert. denied,* —— U.S. ——, 118 S.Ct. 626, 139 L.Ed.2d 607 (1997); *Viola,* 42 F.3d at 716–19 (finding the events surrounding discharge consistent with legitimate business reasons, summary judgment was properly granted for employer); *Guider v. F.W. Woolworth Corp.,* No. 96 Civ. 3168, 1998 WL 702275, at *1 (S.D.N.Y. Oct.7, 1998) (granting summary judgment in ADEA claim); *Carlton v. Mystic Transp., Inc.,* No. 96 CV 4063, 1998 WL 661494, at *1 (E.D.N.Y. August 25, 1998) (granting summary judgment on ADEA claim); *Hawkins,* 1998 WL 142134, at *9 (granting summary judgment on ADEA case where the evidence showed that the plaintiff was "treated less favorably than other employees by being discharged, she was the oldest worker in her workgroup, and her performance problems were not as bad as [employer] claims"); *Suttell v. Manufacturers Hanover Trust Co.,* 793 F.Supp. 70, 73 (S.D.N.Y.1992) (granting summary judgment on ADEA claim predicated on a younger employee's takeover of plaintiff's responsibilities).

## CONCLUSION

After hearing oral argument and reviewing all the submissions on this matter, the Court concludes that there is no evidence from which a reasonable fact finder could conclude that Plaintiff Igor Ashton was terminated because of his age, rather, the evidence is clear that Pall Corporation discharged Plaintiff because of his unsatisfactory work performance. Accordingly, for all the aforementioned reasons, the Defendant's motion for summary judgment is granted in its entirety and Plaintiff's case is dismissed. The Clerk of the Court is directed to close the case.

SO ORDERED.